## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| IFC CREDIT CORPORATION | Case No. 09-B-27094 |
| Debtor. | Hon. Jacqueline P. Cox |

### FINAL AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL AND THE DISPOSITION OF CERTAIN PROPERTY, PROVIDING ADEQUATE PROTECTION AND GRANTING OTHER RELIEF TO WEST SUBURBAN BANK

Upon the motion (the "Motion") of David P. Leibowitz, the chapter 7 trustee (the "Trustee") of the estate of IFC Capital Corporation (the "Debtor"), seeking the entry of a final order (this "Order") authorizing use of cash collateral and the disposition of certain property, providing adequate protection and granting other relief to West Suburban Bank (the "Lender"); due and adequate notice of the Motion having been served; and the Court having determined that the relief requested in the Motion is in the best interest of this estate and its creditors;

THE COURT FINDS THAT:

A.   On July 27, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On that same day, the Office of the United States Trustee appointed David P. Leibowitz as interim chapter 7 trustee for the Debtor's estate. No trustee was elected at the meeting of creditors held on December 1, 2009, pursuant to 11 U.S.C. § 341, whereupon David P. Leibowitz became the permanent Trustee for Debtor's estate.

B.   On August 15, 2009, as amended by the order dated September 15, 2009, the Court authorized the Trustee to operate the Debtor's business pursuant to § 721.

{7198 ORD A0252066.DOC 9}

C.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the chapter 7 case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

D.  An immediate and ongoing need exists for the Trustee to obtain the use of the Lender's cash collateral to enable him to administer the estate. Without the use of the Lender's cash collateral, the Trustee will be unable to pay the estate's employees and professionals, and meet his other administrative expenses associated with the preservation of the estate's assets pending the ultimate liquidation of the Debtor's business in this chapter 7 case.

E.  The Trustee and the Lender have reached an agreement to provide adequate protection in connection with the use of the Lender's cash collateral.

F.  Notice of the final hearing on the Motion and this Order has been provided (by hand, telecopy or courier delivery) to counsel to the United States Trustee, the twenty (20) largest unsecured creditors of the Debtor and all parties requesting notice in this case. In view of the relief requested, such notice constitutes sufficient notice under Fed. R. Bankr. P. 4001 and no other notice need be given.

**IT IS ORDERED THAT:**

1.  The Motion is granted as set forth herein.

2.  For purposes of this Order:

   a. "<u>Cash Collateral</u>" means the Lease Stream Payments, Referred Lease Stream Payments, and Residuals in which the Lender has a security interest, whether such amounts were collected by a third party servicer or by the Debtor or Trustee.

   b. "<u>Lease Stream Payment</u>" means, with respect to any lease, the monthly or other periodic installments of rent paid over the fixed, initial term of the lease. Lease Stream Payments shall include, but are not limited to, those Lease Stream Payments collected and held by the Trustee, the Lender and/or any third party servicer prior to the entry of this Order. Lease Stream Payment does not include any Referred Lease Stream Payment.

c. "Prepetition Indebtedness" means all indebtedness and obligations incurred prior to the petition date by the Debtor to the Lender.

d. "Referred Lease Stream Payment" means a Lease Stream Payment made on a lease that the Lender has referred to IFC or to the Trustee for assistance in collection. Referred Lease Stream Payments include, as of the date hereof, any payment made on the leases listed on Exhibit B hereto.

e. "Residual" means (i) any monthly or other periodic installments of rent paid under a lease after the expiration of the fixed, initial term of the lease; (ii) any amount paid by any party to purchase the equipment that is subject to a lease; and (iii) any other amount paid by any other party that is not a Lease Stream Payment, less the Collection Expenses (as defined in this Order below). Residuals shall include those Residuals collected and held by the Trustee, the Lender and/or any third party servicer prior to the entry of this Order.

3. Pursuant to 11 U.S.C. § 363(c)(2)(A) and Fed. R. Bankr. P. 4001(b)(2), the Trustee may use Cash Collateral pursuant to the formula set forth in paragraph 4 below and in accordance with the budget (the "Budget") attached hereto as Exhibit A. Notwithstanding the amounts set forth in the Budget, any item or expenditure contained in the Budget may be paid in a month subsequent to the month for which it is scheduled, and item or expenditure contained in the Budget may exceed the amount in the Budget by ten percent (10%). The Trustee's expenditures on any particular item may exceed the amount set forth in the Budget by greater than ten percent (10%) only with the consent of the Lender or further order of the Court. The Budget may be extended by written agreement of the Trustee and the Lender, a copy of which shall be filed with this Court by the Trustee.

4. Following his compliance with the Disposition Procedures set forth below, the Trustee is authorized to use Cash Collateral pursuant to the following formula ("Disposition Formula"):

    a. Twelve and one-half percent (12.5%) of all Lease Stream Payments (reduced to 10% for collections after July 1, 2011) may be used by the Trustee in accordance with the terms of the Budget upon the remaining Lease Stream Payments

being returned to the Lender by the Trustee (or if such Lease Stream Payments are in the possession of a third-party servicer, authorized to be returned to the Lender) pursuant to the Disposition Procedures set forth in this Order.

  b. Twenty five percent (25%) of all Referred Lease Stream Payments may be used by the Trustee in accordance with the terms of the Budget upon the remaining Referred Lease Stream Payments being returned to the Lender by the Trustee (or if such Referred Lease Stream Payments are in the possession of a third-party servicer, authorized to be returned to the Lender) pursuant to the Disposition Procedures set forth in this Order; provided that, with respect to any leasee, once $25,000 has been retained by the Trustee for the purposes set forth herein, 12.5% of all remaining Referred Lease Stream Payments by that lessee on all of its leases may be used by the Trustee in accordance with the terms of the Budget so long as the remaining Referred Lease Stream Payments are returned to the Lender by the Trustee (or if such Referred Lease Stream Payments are in the possession of a third-party servicer, authorized to be returned to the Lender) pursuant to the Disposition Procedures set forth in this Order.

  c. Forty percent (40%) of all Residuals may be used by the Trustee in accordance with the terms of the Budget upon sixty percent (60%) of the remaining Residuals collected being returned to the Lender (or if such Residuals are in the possession of a third-party servicer, authorized to be returned to the Lender) pursuant to the Disposition Procedures set forth in this Order.

  d. In the event the Trustee is required to engage counsel to collect a Referred Lease Stream Payment or a Residual, all related attorneys fees and costs ("Collection Expenses") incurred in connection with such Referred Lease Stream Payment or Residual, which fees and costs shall be separately itemized, shall be surcharged pursuant to 11 U.S.C. § 506(c) on the amount of the Referred Lease Stream Payment or Residual collection prior to allocation of the remaining proceeds under the Disposition Formula. For the purposes of clarity, the § 506(c) surcharge imposed pursuant to this paragraph is intended to apply to attorneys fees and costs of special counsel incurred to collect individual Lease Stream Payments, Referred Lease Stream Payments or Residuals after default by a lessee under a Lease.

5. Pursuant to 11 U.S.C. § 725, the Trustee is authorized to use and/or dispose of Cash Collateral to the Lender pursuant to the Disposition Formula. In the event the Trustee elects to use and/or dispose of any Cash Collateral to the Lender, the Trustee shall follow the following procedures (the "Disposition Procedures"):

  a. The Trustee shall file a notice ("Disposition Notice") with the Court indicating the Trustee's intent to return and/or use any Cash Collateral. The Disposition Notice shall identify: (i) the name of the lessee; (ii) the Lease number; (iii) the type of Cash Collateral to be returned (i.e., Lease Stream Payment, Referred Lease Stream

Payment, or Residual); (iv) the name of original lessor listed on the face of the lease; (v) the name of any subsequent lessor, if an actual assignment of the title of the lease is included the Debtor's lease file; (vi) the amount of the Cash Collateral to be returned to the Lender; (vii) the name of the party (e.g., third party servicer) authorized to release the Cash Collateral to the Lender; and (viii) the name of the Lender to receive the Cash Collateral. The Disposition Notice shall be served on (a) all parties requesting notice in this case and (b) all parties whom the Trustee believes may claim an interest in the Cash Collateral to be returned (the "Notice Parties"). The Trustee shall also post the Disposition Notice on the following website: www.lakelaw.com/IFC. For recurring monthly Lease Stream Payments and Referred Lease Stream Payments, the Trustee need include the foregoing information on a Disposition Notice only with respect to the first time that the Trustee proposes to dispose of such Cash Collateral.

      b.    After the expiration of fourteen (14) days following service of the Disposition Notice, the Trustee may return and/or use the Cash Collateral as set forth in the Notice of Disposition without further Court order, except with respect to Cash Collateral as to which an objection has been served as provided in paragraph (c) below.

      c.    In the event that any party has an objection to the return and/or use of any Cash Collateral sought in a Disposition Notice, the objecting party shall, within seven (7) days of the service of the Disposition Notice, serve upon the Trustee, other Notice Parties and the Lender to which the objection is directed, a written "Notice of Objection to Disposition" setting forth the precise nature of the objection and the Cash Collateral at issue. Any Notice of Objection to Disposition must (i) specifically identify the specific amount and source (i.e., by designating the lessee name or lease number) of any Cash Collateral in which the objecting party believes it has a superior interest, and (ii) attach documentation which supports and/or provides a basis for the objecting party's alleged superior interest. Thereafter, the objecting party, the Trustee and Lender shall attempt to reach an agreement regarding the correct disposition to be made. If the parties are unable to reach an agreement on the objection within fourteen (14) days after service of the Disposition Notice, the objecting party shall file a Motion to Resolve Objection to Disposition with the Court and serve such objection on the Trustee and the applicable Lender. The failure of a party to timely file and serve a Motion to Resolve Objection to Disposition shall be deemed a waiver of its objection to the proposed disposition or use of Cash Collateral as set forth in the Disposition Notice. The Trustee is authorized to return and/or use any Cash Collateral that is not the subject of a Notice of Objection to Disposition or if no Motion to Resolve Objection to Disposition is timely filed or served by the objecting party.

6.    Upon disposition of any Cash Collateral pursuant to the foregoing Distribution Procedures, the applicable Lender is authorized to apply the Cash Collateral to its Prepetition Indebtedness. Any Cash Collateral returned to the Lender pursuant to this Order shall be considered a distribution for purposes of 11 U.S.C. § 726.

7. The Trustee shall provide to the Lender information on the status of the Lender's collateral and on, as of the end of any month, the balance of cash held by the Trustee (excluding cash not available to the Trustee that has been sequestered for any party).

8. The Lender whose Cash Collateral is retained and used by the Trustee in accordance with this Order shall retain the following rights: for the total amount of the Lender's cash collateral that is retained and used by the Trustee under Paragraph 4.a above <u>and</u> for one-half of the total amount of the Lender's cash collateral that is retained any used by the Trustee under Paragraphs 4.b and 4.c above (the total amount of the foregoing being the "<u>Used Amount</u>"), the Lender shall have an administrative claim with priority under § 507(b), provided that any such claim shall be subordinate and subject to (i) the aggregate allowed unpaid fees and expenses payable under §§ 326 to 331 to the Trustee and to professional persons retained by the Trustee pursuant to court order (the "<u>Trustee's Professionals</u>") and (ii) all fees previously paid to the Trustee's Professionals and all amounts spent by the Trustee in operating or liquidating the Debtor's business and property pursuant to the orders of the Court (the amount specified in clauses (i) and (ii) of this paragraph, collectively, the "<u>Carve-Out</u>"). The Lender agrees that the Carve-Out shall not be limited to fees and expenses incurred that relate to its collateral but that it also covers fees and expenses generally incurred in the creation of an estate and a recovery for unsecured creditors. The Trustee agrees that, as to amounts distributed to the Lender under this Order, any compensation or fee that the Trustee is entitled to under chapter 3 of the Bankruptcy Code ("<u>Trustee Fees</u>") shall be paid from the Carve-Out or from the Cash Collateral that the Trustee is authorized to retain and use under this Order; provided, however, nothing in this order is intended to limit the payment of Trustee Fees from other estate assets. Each Lender shall retain a right to assert a non-administrative claim for any of its Cash Collateral used or retained

by the Trustee under this Order that is (i) not a Used Amount and (ii) for any surcharges paid by the Lender under Paragraph 4.d of this Order. The terms of this paragraph shall survive the termination of this Order and/or dismissal of the bankruptcy case.

9.  The Trustee may terminate the Order on five days notice to the Lender. After August 31, 2010, the Lender may terminate its consent to the use of its cash collateral under this Order on 30 days notice to the Trustee. The termination of this Order, or the termination by the Lender of its consent to this Order, shall operate only prospectively. In the event of termination by the Lender, the Lender shall account for and pay to the Trustee amounts that otherwise would have been retained by the Trustee under the Disposition Formula on account of any amounts collected and paid over to the Lender on Referred Lease Stream Payments or Residuals in the six months following the effective date of termination. Nothing herein prevents the Trustee from abandoning any lease, equipment, or residual rights in which the estate has an interest. Nothing herein prevents the Lender from, on 14 days notice to the Debtor, withdrawing the referral of a lease or residual to the Debtor for servicing or collection, provided that the Lender shall account for and pay to the Trustee amounts that otherwise would have been retained by the Trustee under the Disposition Formula on account of any amounts collected and paid over to the Lender on such leases or Residuals in the six months following the withdrawal of the referral to the Debtor.

10.  Nothing herein shall be deemed (i) a determination, stipulation, release or waiver regarding the validity, perfection, enforceability, priority, or nonavoidability (under § 510, 544, 545, 547, 548, 550, 551, 552 or 553 or otherwise) of the Prepetition Indebtedness and the security interests in and liens on any collateral or ownership interest asserted by any party or (ii) a waiver by the Trustee of any rights under the Bankruptcy Code, including the right to (A) seek the avoidance of any interest or transfer or determination of any interest pursuant to

chapter 5 of the Bankruptcy Code or otherwise, or (C) the right to collect any fees allowed the Trustee; provided that as to any Lease Stream Payment, Referred Lease Stream Payment, or Residual that is subject to the Disposition Formula and surcharge of Paragraph 4 of this Order, the Trustee shall have no additional surcharge rights under § 506(c) of the Bankruptcy Code. Except as provided herein, the Trustee expressly reserves all of his rights with respect to any §506(c) claim that may be asserted against the Lender or any of its collateral. The Lender expressly reserve all of its rights to object to any § 506(c) claim asserted by the Trustee, other than the § 506(c) surcharge imposed pursuant to paragraph 4.c.

11. The Lender shall take all necessary action to ensure that the agreement set forth in this Order complies with 12 U.S.C. § 1823 and shall provide documentation confirming the same to the Trustee.

12. This Order shall not constitute a waiver by the Trustee, the Lender or any other party of any of their rights, claims, defenses and interests except as expressly provided herein.

13. Nothing in this Order or the procedures set forth herein shall determine the validity, priority or extent of a lien or other interest in property.

14. The Lender's Motion for Relief from Stay as to Personal Property Leases [Dkt. # 23.] is withdrawn without prejudice.

15. This Order is effective as of the date of its entry, and may be modified for cause shown on motion by the Trustee or the Lender.

16. Only with respect to the first Disposition Notice issued by the Trustee, First Portland Corporation ("FPC") shall have ten (10) days to serve a Notice of Objection to Disposition and otherwise comply with the objection procedures set forth in paragraph 5.c of this Order after the later of (i) the Trustee's service of the first Disposition Notice on counsel for FPC

and (ii) the date the Trustee makes available to FPC the Debtor's lease files and financial records with respect to any lease appearing on the Disposition Notice ("Records"). FPC may inspect and copy any non-privileged Records at its own expense after executing a mutually acceptable confidentiality agreement.

Dated: 3/18/10

Prepared by:

**ENTER:**

_J. Cox_  Jacqueline P. Cox
Bankruptcy Judge

AGREED TO AND ACCEPTED:

David P. Leibowitz, solely in his capacity as the chapter 7 trustee of the estate of IFC Credit Corporation

By:_____

West Suburban Bank

By: _William Barrett_

Its: _Counsel_

and (ii) the date the Trustee makes available to FPC the Debtor's lease files and financial records with respect to any lease appearing on the Disposition Notice ("Records"). FPC may inspect and copy any non-privileged Records at its own expense after executing a mutually acceptable confidentiality agreement.

**ENTER:**

Dated: _____

_____
Bankruptcy Judge

Prepared by:

AGREED TO AND ACCEPTED:

David P. Leibowitz, solely in his capacity as the chapter 7 trustee of the estate of IFC Credit Corporation,

By: _____

West Suburban Bank

By: _____

Its: _____

# EXHIBIT A

{000 EXH A0228609.DOC}

| | Week Ending | | | | | | Week Ending | | | | | Week Ending | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2/5/2010 | 2/12/2010 | 2/19/2010 | 2/26/2010 | Total | 3/5/2010 | 3/12/2010 | 3/19/2010 | 3/26/2010 | Total | 4/2/2010 | 4/9/2010 | 4/16/2010 | 4/23/2010 | 4/30/2010 | Total |
| **Cash Inflows** | | | | | | | | | | | | | | | | |
| Lease payments (residuals/ renewals) | 40,000 | 40,000 | 42,000 | 43,000 | 165,000 | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | 32,000 | 32,000 | 32,000 | 35,000 | 35,000 | -166,000 |
| Miscellaneous (Fees etc.) | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Lease payment (pass thru) | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Warrant sale proceeds | | | | | | | | | | | | | | | | |
| Sales Tax (pass thru) | 5,000 | 5,000 | 5,000 | 10,000 | 25,000 | 5,000 | 5,000 | 5,000 | 10,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Total Cash Inflows | 90,000 | 90,000 | 92,000 | 98,000 | 370,000 | 90,000 | 90,000 | 90,000 | 95,000 | 365,000 | 82,000 | 82,000 | 82,000 | 85,000 | 85,000 | 416,000 |
| **Cash Outflows** | | | | | | | | | | | | | | | | |
| Pre-Petition | | | | | | | | | | | | | | | | |
| Sales Taxes (trust fund) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Employee insurance premium | | | | | | | | | | | | | | | | |
| Total Pre-Petition | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Post Petition** | | | | | | | | | | | | | | | | |
| Gross Salaries - current employees | | 45,430 | | 45,430 | 90,860 | | 45,430 | | 45,430 | 90,860 | | 39,355 | | 39,355 | | 78,710 |
| Employer taxes | | 3,407 | | 3,407 | 6,814 | | 3,407 | | 3,407 | 6,814 | | 3,010 | | 3,010 | | 6,020 |
| Insurance premium - current employees | | 5,500 | | | 5,500 | | 5,500 | | | 5,500 | 5,500 | | | | | 5,500 |
| Travel expenses, B. Purcell | 5,000 | | | | 5,000 | 5,000 | | | | 5,000 | 5,000 | | | | | 5,000 |
| Outside payroll services | | 100 | | 100 | 200 | | 100 | | 100 | 200 | | 100 | | 100 | | 200 |
| Copier Lease Payments | | 1,200 | | | 1,200 | | 1,200 | | | 1,200 | 1,200 | | | | | 1,200 |
| Computer Equipment Leased (IBM) | 1,000 | | | | 1,000 | | 1,000 | | | 1,000 | 1,000 | | | | | 1,000 |
| Computer Maintenance | 750 | 1,321 | | | 2,071 | | 1,321 | 5,500 | | 6,821 | | | | | | |
| Computer Back up Tape Service | 458 | | | | 458 | 400 | | | | 400 | | | | | | |
| Office/Equipment move expenses | | | | 1,000 | 1,000 | 5,000 | | | | 5,000 | | | | | | |
| Software support agreements (LeaseTeam/ GP) | | | 15,000 | | 15,000 | | | | | | | | | | | |
| Postage/ UPS / Fed Ex | 100 | | | 100 | 200 | 100 | | | 100 | 200 | 100 | | | 100 | | |
| Internet (Paete3c) | 3,000 | | | | 3,000 | 1,500 | 1,500 | 600 | | 1,500 | 600 | | | | | 1,500 |
| Phones | 3,000 | | | | 3,000 | | | | | 2,100 | | | | | | |
| Invoice Processing | | 1,000 | | | 1,000 | | 1,000 | | | 1,000 | 1,000 | | | | | 1,000 |
| Office rent Current Space | 16,000 | | | | 16,000 | 8,000 | | | | 8,000 | | | | | | |
| Office Rent New Space | | | | | | 5,000 | | | | 5,000 | 5,000 | | | | | |
| Insurance - Mesirow | | | | | | | | | | | 1,851 | | | | | |
| New Hardware / Server / Email | | | | 15,000 | 15,000 | 250 | | | | 250 | 250 | | | | | |
| Other | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 16,000 |
| Total Post Petition | 30,808 | 59,458 | 16,500 | 66,537 | 173,303 | 26,750 | 61,958 | 7,600 | 50,537 | 146,845 | 33,501 | 43,965 | 1,500 | 44,065 | | |
| Sales tax | | 25,000 | | | 25,000 | | 25,000 | | | 25,000 | | 25,000 | | | | |
| **Case Administration:** | | | | | | | | | | | | | | | | |
| Lakelaw | 15,000 | | | | 15,000 | 25,000 | | 15,000 | | 40,000 | 25,000 | | | 15,000 | | |
| Special Collection Counsel (tbd) | | | | | | | | | | | | | | | | |
| Shaw Gussis - Trustee Special Counsel | 25,000 | | 25,000 | | 50,000 | 25,000 | 23,000 | 25,000 | | 73,000 | | 23,000 | 25,000 | | 25,000 | |
| Morris Anderson | | | | | | | | | 39,000 | 39,000 | | | | 39,000 | | |
| Garden City--Noticing Agent (2) | | 6,000 | | 6,000 | 12,000 | 5,000 | 5,000 | 5,000 | | 15,000 | | | 1,000 | | | |
| Outside Accountants | | | | | | | 20,000 | | | 20,000 | | 20,000 | | | | |
| Total Case Administration | 40,000 | 6,000 | 25,000 | 6,000 | 77,000 | 55,000 | 43,000 | 45,000 | 44,000 | 187,000 | 25,000 | 43,000 | 26,000 | 54,000 | 25,000 | 173,000 |
| Total Cash Outflows | 70,808 | 90,458 | 41,500 | 72,537 | 275,303 | 81,750 | 129,958 | 52,600 | 94,537 | 358,845 | 58,501 | 111,965 | 27,500 | 98,065 | 25,000 | 321,031 |
| **Cash Flow Summary** | | | | | | | | | | | | | | | | |
| Opening Cash Balance | 190,109 | 209,301 | 208,843 | 259,343 | 190,109 | 284,806 | 293,056 | 253,098 | 290,498 | 284,806 | 290,961 | 314,460 | 284,495 | 338,995 | 325,930 | 290,961 |
| Cash Inflow | 90,000 | 90,000 | 92,000 | 98,000 | 370,000 | 90,000 | 90,000 | 90,000 | 95,000 | 365,000 | 82,000 | 82,000 | 82,000 | 85,000 | 85,000 | 416,000 |
| Cash Outflow | 70,808 | 90,458 | 41,500 | 72,537 | 275,303 | 81,750 | 129,958 | 52,600 | 94,537 | 358,845 | 58,501 | 111,965 | 27,500 | 98,065 | 25,000 | 321,031 |
| Ending Cash Balance | 209,301 | 208,843 | 259,343 | 284,806 | 284,806 | 293,056 | 253,098 | 290,498 | 290,961 | 290,961 | 314,460 | 284,495 | 338,995 | 325,930 | 385,930 | 385,930 |

| | 5/7/2010 | 5/14/2010 | 5/21/2010 | 5/28/2010 | Total | 6/4/2010 | 6/11/2010 | 6/18/2010 | 6/25/2010 | Total | 7/2/2010 | 7/9/2010 | 7/16/2010 | 7/23/2010 | 7/30/2010 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Inflows** | | | | | | | | | | | | | | | | |
| Case payments (residuals/ renewals) | 38,000 | 38,000 | 39,000 | 39,000 | 154,000 | 35,000 | 35,000 | 35,000 | 35,000 | 140,000 | 30,000 | 30,000 | 32,000 | 32,000 | 32,000 | 156,000 |
| Miscellaneous (Fees etc.) | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Case payment (pass thru) | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Warrant sale proceeds | | | | | | | | | | | | | | | | |
| Sales Tax (pass thru) | 5,000 | 5,000 | 5,000 | 10,000 | 25,000 | 5,000 | 5,000 | 5,000 | 10,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Total Cash Inflows | 88,000 | 88,000 | 89,000 | 94,000 | 359,000 | 85,000 | 85,000 | 85,000 | 90,000 | 345,000 | 80,000 | 80,000 | 82,000 | 82,000 | 82,000 | 406,000 |
| **Cash Outflows** | | | | | | | | | | | | | | | | |
| **Pre-Petition** | | | | | | | | | | | | | | | | |
| Sales Taxes (trust fund) | | | | | | | | | | | | | | | | |
| Employee insurance premium | | | | | | | | | | | | | | | | |
| Total Pre-Petition | | | | | | | | | | | | | | | | |
| **Post Petition** | | | | | | | | | | | | | | | | |
| Gross Salaries - current employees | 39,355 | | 39,355 | | 78,710 | 39,355 | | 39,355 | | 78,710 | 39,355 | | 39,355 | | 39,355 | 118,065 |
| Employer taxes | 3,010 | | 3,010 | | 6,020 | 3,010 | | 3,010 | | 6,020 | 3,010 | | 3,010 | | 3,010 | 6,020 |
| Insurance premium - current employees | 5,500 | | | | 5,500 | 5,500 | | | | 5,500 | 5,500 | | | | | 5,500 |
| Travel expenses, B. Purcell | 5,000 | | | | 5,000 | 5,000 | | | | 5,000 | 5,000 | | | | | 5,000 |
| Outside payroll services | 100 | | | | 100 | | 100 | | 100 | 200 | 100 | | 100 | | 100 | 200 |
| Copier Lease Payments | | 1,200 | | | 1,200 | | 1,200 | | | 1,200 | | 1,200 | | | | 1,200 |
| Computer Equipment Leased (IBM) | | | | | | | | | | | | | | | | |
| Computer Maintenance | 1,000 | | | | 1,000 | 1,000 | | | | 1,000 | 1,000 | | | | | 1,000 |
| Computer Back up Tape Service | | | | | | | | | | | | | | | | |
| Office/Equipment move expenses | | | | | | | | | | | | | | | | |
| Software support agreements (LeaseTeam/ GP) | | | | | | | | | | | 10,500 | | | | | 10,500 |
| Postage/ UPS / Fed Ex | 100 | | | 100 | 200 | 100 | | | 100 | 200 | 100 | | | 100 | | 200 |
| Internet (Paete3c) | 600 | | | | 600 | 600 | | | | 600 | 600 | | | | | 600 |
| Phones | | | | | | | | | | | | | | | | |
| Invoice Processing | 1,000 | | | | 1,000 | 1,000 | | | | 1,000 | 1,000 | | | | | 1,000 |
| Office rent Current Space | | | | | | | | | | | | | | | | |
| Office Rent New Space | 5,000 | | | | 5,000 | 5,000 | | | | 5,000 | 5,000 | | | | | 5,000 |
| Insurance - Mesirow | | | | | | | | | | | 59,000 | | | | | 59,000 |
| New Hardware / Server / Email | 250 | | | | 250 | 250 | | | | 250 | 250 | | | | | 250 |
| Other | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Total Post Petition | 62,415 | 2,700 | 43,865 | 10,782 | 109,580 | 62,315 | 2,800 | 43,865 | 1,700 | 109,680 | 131,915 | 2,700 | 43,965 | 1,600 | 43,965 | 210,535 |
| Sales tax | | 25,000 | | | 25,000 | | 25,000 | | | 25,000 | | 25,000 | | | | 25,000 |
| **Case Administration:** | | | | | | | | | | | | | | | | |
| Bakelaw | 25,000 | | 15,000 | | 40,000 | 15,000 | | | | 15,000 | | | 15,000 | | | 15,000 |
| Special Collection Counsel (tbd) | | | | | | | | | | | | | | | | |
| Shaw Gussis - Trustee Special Counsel | | 25,000 | 24,000 | 25,000 | 74,000 | | 25,000 | | 25,000 | 50,000 | | 25,000 | | 25,000 | | 50,000 |
| Morris Anderson | 40,000 | | | | 40,000 | | | | | | | | | | | |
| Garden City-Noticing Agent (2) | | 1,000 | | | 1,000 | | | 1,000 | | 1,000 | | | | | 1,000 | 1,000 |
| Outside Accountants | | | | | | | | | | | | | | | | |
| Total Case Administration | 65,000 | 26,000 | 39,000 | 25,000 | 155,000 | 15,000 | 25,000 | 1,000 | 25,000 | 66,000 | | 25,000 | 15,000 | 25,000 | 1,000 | 66,000 |
| Total Cash Outflows | 127,415 | 53,700 | 82,865 | 35,782 | 289,580 | 77,315 | 52,800 | 44,865 | 26,700 | 200,680 | 131,915 | 52,700 | 58,965 | 41,600 | 44,965 | 309,535 |
| **Cash Flow Summary** | | | | | | | | | | | | | | | | |
| Opening Cash Balance | 385,930 | 346,515 | 380,815 | 386,950 | 385,930 | 455,350 | 463,035 | 495,235 | 535,370 | 455,350 | 599,670 | 547,755 | 575,055 | 598,090 | 638,490 | 599,670 |
| Cash Inflow | 88,000 | 88,000 | 89,000 | 94,000 | 359,000 | 85,000 | 85,000 | 85,000 | 90,000 | 345,000 | 80,000 | 80,000 | 82,000 | 82,000 | 82,000 | 406,000 |
| Cash Outflow | 127,415 | 53,700 | 82,865 | 35,782 | 289,580 | 77,315 | 52,800 | 44,865 | 26,700 | 200,680 | 131,915 | 52,700 | 58,965 | 41,600 | 44,965 | 309,535 |
| Ending Cash Balance | 346,515 | 380,815 | 386,950 | 445,168 | 455,350 | 463,035 | 495,235 | 535,370 | 598,670 | 599,670 | 547,755 | 575,055 | 598,090 | 638,490 | 675,525 | 696,135 |

| | Week Ending | | | | | Total | Week Ending | | | | | Total | Week Ending | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/6/2010 | 8/13/2010 | 8/20/2010 | 8/27/2010 | | | 9/3/2010 | 9/10/2010 | 9/17/2010 | 9/24/2010 | | | 10/1/2010 | 10/8/2010 | 10/15/2010 | 10/22/2010 | 10/29/2010 | |
| **Cash Inflows** | | | | | | | | | | | | | | | | | | |
| Lease payments (residuals/ renewals) | 35,000 | 35,000 | 35,000 | 35,000 | | 140,000 | 40,000 | 40,000 | 40,000 | 40,000 | | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Miscellaneous (Fees etc.) | 5,000 | 5,000 | 5,000 | 5,000 | | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Lease payment (pass thru) | 40,000 | 40,000 | 40,000 | 40,000 | | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | | 160,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Warrant sale proceeds | | | | | | | | | | | | | | | | | | |
| Sales Tax (pass thru) | 5,000 | 5,000 | 5,000 | 10,000 | | 25,000 | 5,000 | 5,000 | 5,000 | 10,000 | | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| **Total Cash Inflows** | 85,000 | 85,000 | 85,000 | 90,000 | | 345,000 | 90,000 | 90,000 | 90,000 | 95,000 | | 365,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 450,000 |
| **Cash Outflows** | | | | | | | | | | | | | | | | | | |
| **Pre-Petition** | | | | | | | | | | | | | | | | | | |
| Sales Taxes (trust fund) | - | - | - | - | | - | - | - | - | - | | - | | | | | | |
| Employee insurance premium | - | - | - | - | | - | - | - | - | - | | - | | | | | | |
| **Total Pre-Petition** | - | - | - | - | | - | - | - | - | - | | - | | | | | | |
| **Post Petition** | | | | | | | | | | | | | | | | | | |
| Gross Salaries - current employees | | 39,355 | | 39,355 | | 78,710 | | 39,355 | | 39,355 | | 78,710 | | 39,355 | | 39,355 | | 78,710 |
| Employer taxes | | 3,010 | | 3,010 | | 6,020 | | 3,010 | | 3,010 | | 6,020 | | 3,010 | | 3,010 | | 6,020 |
| Insurance premium - current employees | 5,500 | | | | | 5,500 | 5,500 | | | | | 5,500 | 5,500 | | | | | 5,500 |
| Travel expenses, B. Purcell | 5,000 | | | | | 5,000 | 5,000 | | | | | 5,000 | 5,000 | | | | | 5,000 |
| Outside payroll services | | 100 | | 100 | | 200 | | 100 | | 100 | | 200 | | 100 | | 100 | | 200 |
| Copier Lease Payments | | 1,200 | | | | 1,200 | | 1,200 | | | | 1,200 | | 1,200 | | | | 1,200 |
| Computer Equipment Leased (IBM) | | | | | | | | | | | | | | | | | | |
| Computer Maintenance | 1,000 | | | | | 1,000 | 1,000 | | | | | 1,000 | 1,000 | | | | | 1,000 |
| Computer Back up Tape Service | | | | | | | | | | | | | | | | | | |
| Office/Equipment move expenses | | | | | | | | | | | | | | | | | | |
| Software support agreements (LeaseTeam/ GP) | | | | | | | | | | | | | | | | | | |
| Postage/ UPS / Fed Ex | 100 | | | 100 | | 200 | 100 | | | 100 | | 200 | 10,500 | | | 100 | | 10,600 |
| Internet (Paete3c) | 600 | | | | | 600 | 600 | | | | | 600 | 100 | | | | | 2nd |
| Phones | | | | | | | | | | | | | | | | | | 600 |
| Invoice Processing | 1,000 | | | | | 1,000 | 1,000 | | | | | 1,000 | 1,000 | | | | | 1,000 |
| Office rent Current Space | | | | | | | | | | | | | | | | | | |
| Office Rent New Space | | | | | | | | | | | | | | | | | | |
| Insurance - Mesirow | 5,000 | | | | | 5,000 | 5,000 | | | | | 5,000 | 5,000 | | | | | 5,000 |
| New Hardware / Server / Email | | | | | | | | | | | | | | | | | | 6,687 |
| Other | 250 | | | | | 250 | 250 | | | | | 250 | 250 | | | | | 250 |
| **Total Post Petition** | 1,500 | 1,500 | 1,500 | 1,500 | | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | | 6,000 | 1,500 | 1,500 | 1,500 | 1,500 | | 6,000 |
| | 19,950 | 45,165 | 1,500 | 44,065 | | 109,680 | 19,950 | 45,165 | 1,500 | 44,065 | | 109,680 | 30,450 | 45,165 | 1,500 | 44,065 | | 125,467 |
| Sales tax | | 25,000 | | | | 25,000 | | 25,000 | | | | 25,000 | | 25,000 | | | | 25,000 |
| **Case Administration:** | | | | | | | | | | | | | | | | | | |
| Bakelaw | 15,000 | | | | | 15,000 | 15,000 | | | | | 15,000 | | 15,000 | | | | 15,000 |
| Special Collection Counsel (tbd) | | | | | | | | | | | | | | | | | | |
| Shaw Gussis - Trustee Special Counsel | | 25,000 | | 25,000 | | 50,000 | | | 25,000 | 25,000 | | 50,000 | | 25,000 | | 25,000 | | 50,000 |
| Toms Anderson | | | | | | | | | | | | | | | | | | |
| Barden City--Noticing Agent (2) | | | 1,000 | | | 1,000 | | | 1,000 | | | 1,000 | | | | | 1,000 | 1,000 |
| Outside Accountants | | | | | | | | | | | | | | | | | | |
| **Total Case Administration** | 15,000 | 25,000 | 1,000 | 25,000 | | 66,000 | 15,000 | | 26,000 | 25,000 | | 66,000 | | 25,000 | 15,000 | 40,000 | 1,000 | 66,000 |
| **Total Cash Outflows** | 34,950 | 95,165 | 2,500 | 69,065 | | 200,680 | 34,950 | 70,165 | 27,500 | 69,065 | | 200,680 | 30,450 | 95,165 | 16,500 | 84,065 | 1,000 | 217,861 |
| **Cash Flow Summary** | | | | | | | | | | | | | | | | | | |
| Opening Cash Balance | 696,135 | 746,185 | 736,020 | 818,520 | | 696,135 | 840,455 | 895,505 | 915,340 | 977,840 | | 840,455 | 1,004,775 | 1,064,325 | 1,059,160 | 1,132,660 | 1,138,595 | 1,004,775 |
| Cash Inflow | 85,000 | 85,000 | 85,000 | 90,000 | | 345,000 | 90,000 | 90,000 | 90,000 | 95,000 | | 365,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 450,000 |
| Cash Outflow | 34,950 | 95,165 | 2,500 | 69,065 | | 200,680 | 34,950 | 70,165 | 27,500 | 69,065 | | 200,680 | 30,450 | 95,165 | 16,500 | 84,065 | 1,000 | 217,861 |
| Ending Cash Balance | 746,185 | 736,020 | 818,520 | 839,455 | | 840,455 | 895,505 | 915,340 | 977,840 | 1,003,775 | | 1,004,775 | 1,064,325 | 1,059,160 | 1,132,660 | 1,138,595 | 1,227,595 | 1,236,906 |

| | Week Ending | | | | | | Week Ending | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11/5/2010 | 11/12/2010 | 11/19/2010 | 11/26/2010 | Total | | 12/3/2010 | 12/10/2010 | 12/17/2010 | 12/24/2010 | 12/31/2010 | Total |
| **Cash Inflows** | | | | | | | | | | | | |
| Lease payments (residuals/ renewals) | 45,000 | 45,000 | 45,000 | 45,000 | 180,000 | | 40,000 | 40,000 | 45,000 | 45,000 | 45,000 | 215,000 |
| Miscellaneous (Fees etc.) | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Lease payment (pass thru) | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 | | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Warrant sale proceeds | | | | | | | | | | | | |
| Sales Tax (pass thru) | 5,000 | 5,000 | 5,000 | 10,000 | 25,000 | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Total Cash Inflows | 95,000 | 95,000 | 95,000 | 100,000 | 385,000 | | 90,000 | 90,000 | 95,000 | 95,000 | 95,000 | 465,000 |
| **Cash Outflows** | | | | | | | | | | | | |
| **Pre-Petition** | | | | | | | | | | | | |
| Sales Taxes (trust fund) | - | - | - | - | - | | - | - | - | - | - | - |
| Employee Insurance premium | - | - | - | - | - | | - | - | - | - | - | - |
| Total Pre-Petition | - | - | - | - | - | | - | - | - | - | - | - |
| **Post Petition** | | | | | | | | | | | | |
| Gross Salaries - current employees | 39,355 | - | 39,355 | - | 78,710 | | - | 39,355 | - | 39,355 | - | 78,710 |
| Employer taxes | 3,010 | - | 3,010 | - | 6,020 | | - | 3,010 | - | 3,010 | - | 6,020 |
| Insurance premium - current employees | 5,500 | - | - | - | 5,500 | | 5,500 | - | - | - | - | 5,500 |
| Travel expenses, B. Purcell | 5,000 | - | - | - | 5,000 | | 5,000 | - | - | - | - | 5,000 |
| Outside payroll services | 100 | - | 100 | - | 200 | | - | 100 | - | 100 | - | 200 |
| Copier Lease Payments | - | 1,200 | - | - | 1,200 | | - | 1,200 | - | - | - | 1,200 |
| Computer Equipment Leased (IBM) | - | - | - | - | - | | - | - | - | - | - | - |
| Computer Maintenance | 1,000 | - | - | - | 1,000 | | 1,000 | - | - | - | - | 1,000 |
| Computer Back up Tape Service | - | - | - | - | - | | - | - | - | - | - | - |
| Office/Equipment move expenses | - | - | - | - | - | | - | - | - | - | - | - |
| Software support agreements (LeaseTeam/ GP) | - | - | - | - | - | | - | - | - | - | - | - |
| Postage/ UPS / Fed Ex | 100 | - | - | 100 | 200 | | 100 | - | - | 100 | - | 200 |
| Internet (Paeta3c) | 600 | - | - | - | 600 | | 600 | - | - | - | - | 600 |
| Phones | - | - | - | - | - | | - | - | - | - | - | - |
| Invoice Processing | 1,000 | - | - | - | 1,000 | | 1,000 | - | - | - | - | 1,000 |
| Office rent Current Space | - | - | - | - | - | | - | - | - | - | - | - |
| Office Rent New Space | - | - | - | - | - | | - | - | - | - | - | - |
| Insurance - Mesirow | 5,000 | - | - | - | 5,000 | | 5,000 | - | - | - | - | 5,000 |
| New Hardware / Server / Email | - | - | - | - | - | | - | - | - | - | - | - |
| Other | 250 | - | - | - | 250 | | 250 | - | - | - | - | 250 |
| Total Post Petition | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | | 1,500 | 1,500 | 1,500 | 1,500 | - | 6,000 |
| | 62,415 | 2,700 | 43,965 | 1,600 | 109,680 | | 19,950 | 45,165 | 1,500 | 44,065 | - | 109,680 |
| Sales tax | - | 25,000 | - | - | 25,000 | | - | 25,000 | - | - | - | 25,000 |
| **Case Administration:** | | | | | | | | | | | | |
| Lakelaw | 15,000 | - | - | - | 15,000 | | - | - | 15,000 | - | - | 15,000 |
| Special Collection Counsel (tbd) | - | - | - | - | - | | - | - | - | - | - | - |
| Shaw Gussis - Trustee Special Counsel | - | 25,000 | - | 25,000 | 50,000 | | - | 25,000 | - | 25,000 | - | 50,000 |
| Morris Anderson | - | - | - | - | - | | - | - | - | - | - | - |
| Garden City-Noticing Agent (2) | - | - | - | - | - | | - | - | - | - | - | - |
| Outside Accountants | - | - | 1,000 | - | 1,000 | | - | - | - | - | 1,000 | 1,000 |
| Total Case Administration | 15,000 | 25,000 | 1,000 | 25,000 | 66,000 | | - | 25,000 | 15,000 | 25,000 | 1,000 | 66,000 |
| Total Cash Outflows | 77,415 | 52,700 | 44,965 | 26,600 | 200,680 | | 19,950 | 95,165 | 16,500 | 84,065 | 1,000 | 200,680 |
| **Cash Flow Summary** | | | | | | | | | | | | |
| Opening Cash Balance | 1,236,908 | 1,254,493 | 1,296,793 | 1,346,828 | 1,236,908 | | 1,421,228 | 1,491,278 | 1,486,113 | 1,564,613 | 1,575,548 | 1,421,228 |
| Cash Inflow | 95,000 | 95,000 | 95,000 | 100,000 | 385,000 | | 90,000 | 90,000 | 95,000 | 95,000 | 95,000 | 465,000 |
| Cash Outflow | 77,415 | 52,700 | 44,965 | 26,600 | 200,680 | | 19,950 | 95,165 | 16,500 | 84,065 | 1,000 | 200,680 |
| Ending Cash Balance | 1,254,493 | 1,296,793 | 1,346,828 | 1,420,228 | 1,421,228 | | 1,491,278 | 1,486,113 | 1,564,613 | 1,575,548 | 1,669,548 | 1,685,548 |

# EXHIBIT B

{000 EXH A0228609.DOC}

# Referred Lease Stream Payments

| Customer Ref # | Agreement | Lessee Name |
|---|---|---|
| W-22798402 | 634-4701311-001 | PHC AND ASSOCIATES INC |
| FW-801195-001 | 634-4701533-001 | VV VENTURES OPERATIONS LLC |
| W-801195-005 | 634-4701533-002 | VV VENTURES OPERATIONS LLC |
| W-801195-008 | 634-4701533-003 | VV VENTURES OPERATIONS LLC |
| W-22400501 | 634-0000039-000 | MONTANA CARDIAC INSTITUTE |
| W-22447602 | 634-4701286-001 | PROCOM COMMUNICATIONS INC |
| W-23102601 | 634-4701379-001 | SVO ARIZONA MANAGEMENT INC |
| W-23117301 | 634-4701402-001 | FABIAN M HART INC |
| FW-801187-005 | 634-4701267-001 | ARTHUR GROOM & CO INC |
| W-23053201 | 634-4701346-001 | KAFFE FAMILY ENTERPRISESINC |
| W-22905901 | 634-4701323-001 | MINERVA GONZALEZ |
| W-801222-001 | 634-4701538-001 | PALMETTO OPEN MRI INC |
| W-801222-002 | 634-4701538-002 | PALMETTO OPEN MRI INC |
| W-801063-008 | 634-4701526-006 | TCG PACKAGING SERVICES INC |
| W-801063-007 | 634-4701526-005 | TCG PACKAGING SERVICES INC |
| W-801063-006 | 634-4701526-004 | TCG PACKAGING SERVICES INC |

## Referred Lease Stream Payments

| | | |
|---|---|---|
| W-801063-002 | 634-4701526-001 | TCG PACKAGING SERVICES INC |
| W-801063-003 | 634-4701526-002 | TCG PACKAGING SERVICES INC |
| W-801063-004 | 634-4701526-003 | TCG PACKAGING SERVICES INC |
| W-23027301 | 634-4701334-001 | PENGUIN CAFE |
| W-21690801 | 634-0000033-000 | AISIN BRAKE & CHASSIS |
| W-23131201 | 634-4701438-001 | THERES HOOK INC |
| W-23122901 | 634-4701420-001 | MERISANT US INC |
| W-23146701 | 634-4701482-001 | AIRCRAFT CARRIER HORNET FOUNDA |
| W-23148501 | 634-4701491-001 | WALTON HOUSTON GALLERIA HOTELS |
| W-23148401 | 634-4701490-001 | WALTON HOUSTON GALLERIA HOTELS |
| W-801109-003 | | PARTNERS CONCEPT DEVELOPMENT |
| W-801109-007 | | PARTNERS CONCEPT DEVELOPMENT |
| W-801109-010 | | PARTNERS CONCEPT DEVELOPMENT |